Filed 1/8/16  Diao v. Southern Cal. Gas Co. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PENGXUAN DIAO, | B258840 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC481312) |
| v. | |
| SOUTHERN CALIFORNIA GAS COMPANY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elizabeth R. Feffer and Richard E. Rico, Judges.  Affirmed.

Willenken Wilson Loh & Delgado, Paul J. Loh, Jason H. Wilson; Gibson, Dunn & Crutcher, Julian W. Poon, and Lauren M. Blas for Defendant and Appellant.

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Panish Shea & Boyle, Kevin R. Boyle, Rahul Ravipudi, and Robert S. Glassman for Plaintiff and Respondent.

_____

Defendant Southern California Gas Company (SoCalGas) appeals from a judgment entered after a jury returned a special verdict awarding plaintiff Pengxuan Diao $19,786,818 in compensatory damages for injuries he sustained as a result of a natural gas leak and fire at his residence. Prior to trial, SoCalGas stipulated its employee negligently caused the leak and fire. On appeal, SoCalGas contends (1) the trial court abused its discretion in declining to exclude evidence of Diao's traumatic brain injury— an injury SoCalGas argues Diao concealed until shortly before trial; (2) there is insufficient evidence demonstrating the gas leak or fire caused a traumatic brain injury; and (3) the "damages award is punitive, excessive, and the result of passion and prejudice, as well as improper argument and misconduct by [Diao]'s counsel." For the reasons explained below, we reject SoCalGas's contentions and affirm the judgment.

## BACKGROUND

### The Natural Gas Leak and Fire

In January 2011, Diao, then 23 years old, rented and lived in a detached, converted garage in San Gabriel he shared with a roommate under a sub-tenancy arrangement. On January 19, 2011, Simon Youde, then a SoCalGas employee, was dispatched to the property where Diao lived to restore gas service to the main house after an earthquake shutoff valve automatically shut off gas service to the property. As Youde was attempting to relight the pilot light on the water heater in the main house, he reached around the back of the water heater and twisted a valve he felt but could not see, inadvertently opening up a gas line which led to the garage. The gas line, which was installed before Diao moved into the garage and was no longer in use, was uncapped at the end where it terminated behind some cabinets in the garage. After Youde restored gas service, he left the property without performing the required leak check. He did not realize gas was flowing freely into the garage where Diao was then sleeping.

Diao slept for another two hours after Youde opened the uncapped gas line to the garage. Diao's bedroom in the garage filled with about 300 cubic feet of natural gas (one-quarter to one-third the volume of his bedroom, which measured 11 feet, 7 inches by 11 feet, 9 inches by 8 feet). Diao awoke at approximately 11:00 a.m., sat up on the edge

2

of his bed, and attempted to light a cigarette. When Diao sparked the lighter, he heard a boom, saw fire engulf his room, and felt a force pushing against him as he ran out of the garage. His entire body felt hot so he ran into the main house and took a cold shower. Afterward, he noticed the skin on his left arm was falling off. An ambulance transported Diao to the hospital.

**Burns and Treatment**

Diao sustained second and third degree burns on 18-20 percent of his body. He remained in the burn unit at Los Angeles County-USC Medical Center for weeks as he underwent painful treatments, including (1) dressing changes once or twice per day during which the remaining skin in the area of the burns was scraped away to prevent infection, (2) surgical debridement during which the dead tissue on Diao's left forearm was removed with a long knife, and (3) skin grafting during which healthy skin from Diao's thigh was removed and placed on his left forearm.

When Diao was released from the hospital, he still had open wounds all over his body. He went to live with his father. A nurse came to the home daily to clean Diao's wounds, which was a very painful process. The skin in the area of the burns would stick together, so every day Diao had to pull it apart and stretch it. Skin fell off Diao's face. He would wake with his pillow covered in blood due to his face bleeding. Diao received follow-up treatment at the burn center. He was in extreme pain every day.

**This Lawsuit**

In March 2012, Diao filed this negligence action against SoCalGas. He alleged SoCalGas's negligence caused "catastrophic and permanent injuries" to him, including third degree burns, "shock and injury to his nervous system and person," and "physical and mental pain and suffering." SoCalGas answered the complaint with a general denial and assertion of affirmative defenses.

In September 2012, SoCalGas stipulated to negligence and that its negligence was a substantial factor in causing Diao's harm, but denied its negligence caused the extent of harm Diao claimed. Thereafter, SoCalGas cross-complained against the homeowners and sub-landlord, alleging they were negligent in making or allowing illegal modifications to

3

the garage where Diao lived and in failing to cap the gas line that ran into the garage. The homeowners, in turn, cross-complained against SoCalGas and the sub-landlord for equitable apportionment and indemnification.

**Discovery Issues and Disputes Pertinent to This Appeal**

In July 2012, in response to SoCalGas's form interrogatories, Diao listed the following injuries he attributed to the natural gas leak and fire:  "Plaintiff [Diao] suffered multiple serious injuries in the subject incident, including second and third degree burns to his face, neck, both upper extremities including hands and digits, right lower back and right lower extremity.  Plaintiff underwent surgery for debridement and skin grafting. Plaintiff now has severe hyperpigmentation and areas of severe burn scarring.  Plaintiff further suffers from chronic pain; numbness; itching, tightness, weakness; limited range of motion; frequent bouts of diarrhea; sexual dysfunction; difficulty falling to sleep; and emotional distress and depression."  Diao further stated in his response that discovery and investigation regarding his injuries were not complete.

At his deposition in June 2013, Diao testified, in or about July 2011, his friends began commenting that his memory and reflexes were worse than they were before the gas leak and fire.  For example, after he returned to work at the hot pot restaurant where he had worked before the fire, his former girlfriend stated it took him longer to understand instructions such as the type of vegetables to purchase for the restaurant. Diao testified, "before the accident, I would just go out and make the purchase, but after the accident, I would have to think about it and then repeat it, what she told me to confirm, what I was understanding correctly, and then went out to make the purchase."[1] Diao explained his memory, comprehension and reaction time were slower than before the fire.  Diao also testified, when he returned to community college after the fire, he

---

[1] Diao quit his job at the hot pot restaurant because he was making so many mistakes and was fearful the cooking would lead to a gas explosion or fire.  He quit a subsequent job at a tea house because he could not remember the recipes, was in pain when he stood on his right ankle for long periods (due to the manner in which the burns had healed), and his skin was too sensitive when he came in contact with water.

4

found he had problems with his short-term memory.  He would learn new vocabulary words in his English as a second language (ESL) class and then forget them shortly thereafter.[2]  In the fall of 2012, he failed his ESL class.

On July 30, 2013, the homeowners' counsel sent a letter to Diao's counsel requesting Diao submit to a neurological examination (in addition to a psychiatric examination) based on Diao's deposition testimony which, in the words of the homeowners' counsel, "raised for the first time a potential brain injury claim."  Diao's counsel initially refused to submit to any mental examinations, absent the homeowners' coordination with SoCalGas, because Diao did not want to submit to multiple defense examinations.  SoCalGas refused to participate in the examinations requested by the homeowners.  The homeowners filed motions to compel the examinations.  Before the motions were heard, Diao agreed he would submit to an examination by the homeowners' neurologist, Dr. Michael Gold, and the homeowners' psychiatrist, Dr. David Rudnick.

Diao retained his own neurologist, Dr. Fisk.  On November 14, 2013, Dr. Fisk conducted a neurological examination of Diao and prepared a seven-page report.  After interviewing Diao through a Mandarin interpreter and examining him, Dr. Fisk stated the following "Assessment":  "Following the injury, the patient has manifested persistent impairment of cognition of uncertain etiology at this point.  Given the persistence of these symptoms and their impact in terms of his academic performance, he should be evaluated neuropsychologically, in Mandarin.  A 3.0 Tesla brain MRI scan is recommended.  The need for a neuropsychiatric evaluation remains to be determined.  [¶] The patient's right ankle pain should be evaluated orthopedically.  [¶]  The patient's headaches are largely the consequence of stress with which the patient is contending.  He will be started on a seven-step cervical range of motion stretching sequence.  These exercises were explained and demonstrated in detail.  They were written down for the patient so he would not forget them.  [¶]  Appropriate therapeutic recommendations will

_____

[2] Diao immigrated to the United States from China in 2009, and was studying ESL at the time of the fire.

5

be made following completion of the patient's neurodiagnostic evaluation." As one of six "Impressions," Dr. Fisk listed: "Posttraumatic headaches in the context of a possible traumatic brain injury."

Diao's attorneys have maintained they did not receive Dr. Fisk's report until Dr. Fisk was deposed on May 1, 2014. Thus, they did not provide this report to the defense at the time expert witness disclosures were made in February 2014, as explained in more detail below.

On December 10, 2013, Diao submitted to the brain MRI Dr. Fisk ordered and the result was normal.

On December 11, 2013, Dr. Gold, the homeowners' neurologist, conducted a neurological examination of Diao and prepared a report. Dr. Gold reviewed documents, including the transcript of Diao's deposition, interviewed Diao through a Mandarin interpreter about his complaints, including "[m]emory impairment," and examined Diao. Dr. Gold concluded Diao's neurological examination was normal, "except for mildly decreased sensation over the dorsum of the left arm and hand." SoCalGas did not participate in this examination.

On December 13, 2013, Dr. Rudnick, the homeowners' psychiatrist, conducted a neuropsychiatric examination of Diao and prepared a report. Dr. Rudnick reviewed Diao's medical records, interviewed Diao through a Mandarin interpreter about his complaints, including memory impairment, and conducted a mental status examination of Diao. Dr. Rudnick concluded Diao had "chronic Posttraumatic Stress Disorder" and "Major Depression" and "should have full recovery from his psychiatric condition" with treatment, including psychotherapy, medication, and cosmetic treatments for his scarring. SoCalGas chose not to participate in this examination.

On January 3, 2014, Diao voluntarily supplemented his responses to SoCalGas's form interrogatories. Regarding injuries he attributed to the gas leak and fire, Diao added: "[A]s Plaintiff testified to in his deposition, as a result of the subject incident, Plaintiff suffers from: trouble with attention skills, concentration and with memory, nightmares, flashbacks, poor appetite, phobic reactions, and hypervigilance." Diao

6

further stated in his supplemental response that discovery and investigation regarding his injuries were not complete.

On February 4, 2014, Diao's retained neurologist, Dr. Fisk, ordered a functional brain MRI (fMRI) and brain SPECT scan for Diao, indicating on the forms "DX:TBI" (a diagnosis of traumatic brain injury).

On February 5, 2014, SoCalGas's counsel sent a letter to Diao's counsel requesting Diao submit to another mental examination. The letter states, in pertinent part, "your client has made mental injury an issue by alleging in the complaint, discovery responses and deposition that he suffers from sexual dysfunction, difficulty falling to sleep, emotional distress and depression, trouble with attention skills, concentration and with memory, nightmares, flashbacks, poor appetite, phobic reactions, hypervigilence, impaired academic abilities, a phobia of cooking anything that requires a flame, the inability to be exposed to common household products due to irritation caused by the chemicals, and mental pain and suffering." Apparently, Diao's counsel declined this request for another defense mental examination.

Also in February 2014, the parties served their expert witness designations. The homeowners designated, among other experts, Dr. Gold (neurologist) and Dr. Rudnick (psychiatrist), both of whom had conducted mental examinations of Diao in December 2013, as discussed above. SoCalGas designated, among other experts, Dr. Barry Ludwig (neurologist) and Dr. Mark Kalish (psychiatrist), neither of whom had examined Diao. Diao designated, among other experts, Dr. Fisk (neurologist), Dr. Johnny Wen (neuropsychologist), Dr. Wei-Chin Hwang (psychologist), and Dr. Monte Buchsbaum (psychiatrist/radiologist). As stated above, Diao did not provide the defense with Dr. Fisk's November 13, 2013 report. His attorneys claim they were unaware of it until Dr. Fisk's deposition on May 1, 2014.

Sometime in February 2014, Dr. Fisk received a report indicating Diao's brain SPECT scan was abnormal. Fisk also learned the results of neuropsychological testing by Dr. Wen were abnormal. Fisk diagnosed Diao with traumatic brain injury. In March 2014, Dr. Buchsbaum (Diao's retained psychiatrist/radiologist) examined the SPECT

7

scan and report, the neuropsychological report, Diao's medical records, and Diao's deposition to opine about the status of Diao's brain. Buchsbaum diagnosed Diao with traumatic brain injury.

On March 4, 2014, SoCalGas filed an ex parte application to continue the April 8, 2014 trial date due to the unavailability of the sub-landlord. The court continued the trial to May 20, 2014. The non-expert discovery cutoff date of March 8, 2014 remained unchanged.

Also on March 4, 2014, SoCalGas filed an ex parte motion for leave to conduct psychiatric and neurological examinations of Diao. On April 2, 2014, after considering Diao's opposition, the trial court (Judge Richard E. Rico) denied the motion, finding SoCalGas (1) had not demonstrated why the proposed examinations were necessary given the neurological and psychiatric examinations already conducted in December 2013 by the homeowners' experts, and (2) had not shown the proposed examinations would not be duplicative of the prior examinations. In its minute order, the court explained: "In light of the examinations already conducted, the examinations requested by [SoCalGas] constitute unnecessary intrusions and invasions of plaintiff's privacy and are burdensome, harassing, and oppressive."

The parties conducted expert witness depositions in April and May 2014. On April 23, 2014, Dr. Buchsbaum (Diao's retained psychiatrist/radiologist) testified about his opinion that Diao suffered from a traumatic brain injury (TBI). According to SoCalGas, this was the first time Diao's "TBI claim was revealed," "just 27 days before trial and over one month after the close of fact discovery."[3]

On May 1, 2014, Dr. Fisk (Diao's retained neurologist) also testified at his deposition that Diao suffered from TBI. This is also the date Diao produced Dr. Fisk's November 14, 2013 examination report to defendants, two-and-one-half months after the February 18, 2014 expert witness disclosure and production deadline. As set forth above,

_____

[3] As stated above, nearly nine months earlier, the homeowners' counsel recognized "a potential brain injury claim" based on Diao's deposition testimony.

Dr. Fisk's "Assessment" in the November 14, 2013 report, did not include a diagnosis of TBI, but he listed "Posttraumatic headaches in the context of a possible traumatic brain injury" as one of six "Impressions." SoCalGas's counsel examined Dr. Fisk about the report.

On May 1, 2014, Dr. Ludwig (SoCalGas's neurologist) was deposed and presented his opinion Diao did not suffer from TBI and provided the basis for his opinion. At the time of his deposition—which occurred the same day Dr. Fisk produced his November 14, 2013 report—Dr. Ludwig already was aware Dr. Wen (Diao's retained neuropsychologist) and Dr. Buchsbaum (Diao's retained radiologist/psychiatrist) had diagnosed Diao with TBI. On May 8, 2014, Dr. Kalish (SoCalGas's psychiatrist) was deposed and presented his opinion Diao did not suffer from a TBI and provided the basis for his opinion.

On May 13, 2014, SoCalGas filed an ex parte application, seeking a five-week trial continuance and permission to augment its expert witness list to include a radiologist and a neuropsychologist. The homeowners joined the ex parte application. SoCalGas argued there was good cause for the relief requested because Diao provided "willfully false discovery responses." In his January 2014 voluntary supplemental responses to SoCalGas's form interrogatories, Diao did not disclose his TBI claim or his November 14, 2013 neurological examination with Dr. Fisk. According to SoCalGas, Diao was required to disclose the examination because Dr. Fisk was acting as a treating physician at the time of the examination and not an expert witness.[4] On May 14, 2014, the trial court (Judge Rico) denied the ex parte application.

On May 19, 2014, SoCalGas filed a motion in limine to exclude evidence of and argument about TBI and anoxia (lack of oxygen from the gas leak and/or fire) based on

---

[4] Dr. Fisk testified at his deposition that he "started out" as Diao's treating physician. In or about November 2013, after the date of the neurological examination, Diao signed an agreement giving Dr. Fisk a lien on Diao's recovery in the litigation, which indicates Dr. Fisk was a treating physician. At trial, however, Dr. Fisk testified that he was retained by Diao's counsel in 2013, before the neurological examination.

9

arguments (1) Diao provided willfully false discovery responses, and (2) there was a lack of evidence of TBI due to trauma or anoxia. The homeowners filed a similar motion in limine, which SoCalGas joined. Plaintiff filed an opposition to these motions in limine.

The trial court (Judge Elizabeth R. Feffer who was assigned to the case for trial) heard oral argument on the motions in limine on May 23, 2014. The court faulted Diao's counsel for not producing Dr. Fisk's November 14, 2013 report in a timely manner, commenting that "there were games being played" and "it's all problematic." The court noted, however, that "ultimately, it [the report] was disclosed and the defense did have an opportunity to explore it." The court declined to exclude evidence of and argument about TBI and anoxia. The court did allow SoCalGas to augment its expert witness designation to include a radiologist (Dr. Alan Waxman), concluding it was unclear from Diao's designation that Dr. Buchsbaum would be offering opinions as a radiologist in addition to his opinions as a psychiatrist. The court rejected SoCalGas's request to designate a neuropsychologist, finding Diao had disclosed Dr. Wen as his neuropsychologist and SoCalGas could have designated its own neuropsychologist at that time.

**Trial**

Trial commenced on May 29, 2014. Diao testified extensively about his injuries (past and present). As discussed above, Diao underwent excruciatingly painful treatments for his burns in the months following the fire. He was extremely upset about the way he looked. He felt his life had "become black, all black."

By the time of trial, more than three years after the fire, Diao still experienced physical pain due to his injuries. Pain in his right ankle prevented him from standing for long periods of time. Because he suffered from neuropathic pain syndrome on his left arm and hand, a light touch caused intense pain. He had weakness in his left hand. He also experienced numbness, tightness, pain, dryness, and itching in the areas around his burn injuries.

Diao continued to feel extremely upset and self-conscious about the scarring on his body. (Fortunately the burns on his face had healed quite nicely by all accounts.) He had areas of hypertrophic scars which were thick and cordlike and caused him physical

10

discomfort. He also had areas of hyperpigmentation where his skin was much darker and areas of hypopigmentation where his skin was much lighter because there was no pigment. Diao tended to cover his scars with clothing, including long sleeves, because he believed people would perceive him as gross and deformed if they saw his scars. Diao rarely socialized with friends and did not date. He avoided exposure to the sun due to his scarring.

Diao presented evidence regarding future surgeries and treatments to improve the look of his scars and to alleviate some of the discomfort associated with them, including steroid injections and a balloon expansion to stretch normal skin over the scar. There were no treatments, however, that could eliminate the scars entirely.

Diao testified about his cognitive impairments after the fire, including his problems with memory and comprehension at school and on-the-job. He remained unemployed and out of school.

Diao presented evidence that neuropsychological testing, the SPECT scan and the fMRI of his brain all demonstrated TBI. He also presented evidence that the TBI most likely was caused by the force of the blast when the natural gas ignited, but could also have been caused by trauma to the head during the explosion, lack of oxygen to his brain (anoxia) while he was sleeping in a room filled with natural gas, carbon monoxide released during the explosion, or a combination of these causes.

At the time of trial, Diao was 26 years old. He presented evidence indicating he would likely develop early-onset dementia by age 55 as a result of his brain injury, requiring assisted living and later 24-hour care.

Diao's father testified on cross-examination that, before the fire, Diao was involved in a car accident which required him to replace his car. Later, when Diao's direct examination resumed, Diao testified he was involved in three car accidents shortly after he came to the United States in 2009. SoCalGas extensively cross-examined Diao regarding the car accidents and impeached him with documents it gathered mid-trial showing an attorney submitted an insurance claim on behalf of Diao and his father after one of the accidents and a chiropractor indicated in a report that Diao had sustained a

11

concussion in the accident. Diao did not disclose an insurance claim or a prior head injury in his interrogatory responses. Diao testified he was unaware of the insurance claim his father's attorney submitted and he disputed the characterization of his alleged injuries as stated in the claim and the chiropractor's report.

None of SoCalGas's experts attributed the car accidents to TBI because they testified Diao did not suffer from TBI either before or after the gas leak and fire. The defense experts disputed the results of the neuropsychological testing, the SPECT scan and the fMRI of Diao's brain indicated TBI.

SoCalGas also cross-examined Diao about his educational history in China. SoCalGas argued to the jury that Diao was not truthful about his academic performance in China and that his pre-fire cognitive abilities were not as superior as he had indicated.

Mid-trial, SoCalGas moved for nonsuit, mistrial and terminating sanctions, arguing Diao had suppressed evidence of TBI and his prior car accidents and had failed to prove TBI causation. The trial court (Judge Feffer) denied the motions, explaining, among other things, (1) it already had remedied any belated TBI disclosure by allowing SoCalGas to designate a radiologist, (2) any failure to disclose the car accidents did not warrant wholesale exclusion of TBI evidence, but was a credibility issue for the jury to weigh, and (3) there was sufficient evidence of TBI causation to go to the jury, including testimony by SoCalGas's experts that asphyxiation is a risk of breathing natural gas.

On June 25, 2014, the jury returned a special verdict awarding Diao $186,718 in past economic damages, $2,600,100 in future economic damages, $8,500,000 in past non-economic damages, and $8,500,000 in future non-economic damages, for a total damages award of $19,786,818. The jury found the homeowners were negligent, their negligence was a substantial factor in causing harm to Diao, and SoCalGas's negligence was not a superseding cause of the harm to Diao. The jury further found the sub-landlord was not negligent. The jury assigned 90 percent of Diao's harm to SoCalGas and 10 percent to the homeowners. On July 2, 2014, the trial court entered judgment consistent with the special verdict.

12

**Post-Trial Motions**

SoCalGas moved for a partial judgment notwithstanding the verdict and for a new trial on several of the grounds raised on appeal. SoCalGas argued Diao committed discovery abuses related to his TBI claim and presented insufficient evidence of TBI. SoCalGas also argued Diao's counsel made improper arguments which resulted in an excessive and punitive damages award. SoCalGas requested the trial court enter a remittitur and reduce the damages award to no more than $6,000,000. The homeowners also made a motion for new trial, arguing for a reduction in the damages award. At the hearing on the post-trial motions, SoCalGas requested the trial court reduce the damages award to a total of $3,486,718.

In connection with the post-trial motions, SoCalGas submitted new evidence related to the car accidents and Diao's educational history. Diao objected to all of the new evidence on multiple grounds (hearsay, lack of foundation) and the trial court sustained all of Diao's objections.

The trial court (Judge Feffer) issued a 28-page ruling addressing defendants' arguments and denying the post-trial motions. In discussing SoCalGas's claim of discovery abuses related to TBI, the court explained the voluminous exhibits submitted by the parties indicated SoCalGas did not exercise reasonable diligence in investigating the cause of Diao's alleged cognitive defects which were revealed during Diao's June 2013 deposition.

**DISCUSSION**

**I.      Discovery Issues Regarding TBI**

**A.      Dr. Fisk**

SoCalGas contends the trial court erred in declining to exclude Dr. Fisk's TBI testimony under Code of Civil Procedure section 2034.300 based on Diao's failure to disclose Dr. Fisk's November 14, 2013 report in a timely manner.

Code of Civil Procedure section 2034.300 states, in pertinent part, "on objection of any party who has made a complete and timely compliance with Section 2034.260, the trial court shall exclude from evidence the expert opinion of any witness that is offered

13

by any party who has unreasonably failed to do any of the following: [¶] (a) List that witness as an expert under Section 2034.260. [¶] (b) Submit an expert witness declaration. [¶] (c) *Produce reports and writings of expert witnesses under Section 2034.270.* [¶] (d) Make that expert available for a deposition under Article 3 (commencing with Section 2034.410)." (Italics added.)

Prior to or during trial, SoCalGas never asked the trial court to exclude Dr. Fisk's testimony under this provision. Instead, SoCalGas asked the court to exercise its discretion and issue an evidence sanction—excluding *all* evidence of TBI—for misuse of the discovery process under section 2023.030, subdivision (c). SoCalGas should not fault the trial court for declining to grant relief SoCalGas never requested.

Had SoCalGas asked the trial court to exclude Dr. Fisk's testimony under this particular provision and the court declined, we would not disturb the court's ruling on appeal. Assuming SoCalGas could demonstrate Diao "unreasonably failed" to produce the report—although Diao's attorneys maintain they were unaware of the report until the date they produced it—SoCalGas cannot demonstrate prejudice. There was substantial evidence of TBI, separate and apart from Dr. Fisk's testimony, including the results of the neuropsychological testing, the SPECT scan and the fMRI of Diao's brain, and substantial evidence the gas leak and fire caused the TBI, as set forth in more detail below in response to SoCalGas's challenge to the sufficiency of the evidence.

### B. Interrogatory responses

SoCalGas contends the trial court erred in declining to grant any relief for Diao's "false" interrogatory responses, and further contends it should have been "able to rely on [Diao's] discovery responses to set at rest significant issues, and remove those issues from the case."

First, SoCalGas points to the fact Diao did not disclose TBI in his interrogatory responses. The evidence shows Diao had not been diagnosed with TBI at the time he responded to SoCalGas's form interrogatories in June 2012 and at the time he voluntarily supplemented his responses to the form interrogatories in January 2014. The results of Diao's initial MRI in December 2013 were normal. Notwithstanding that, Diao disclosed

14

his cognitive impairments at his June 2013 deposition—which alerted the homeowners' counsel to a potential brain injury claim—and in his January 2014 supplemental responses to the form interrogatories. Moreover, Diao stated in his interrogatory response that discovery and investigation regarding his injuries were not complete, which is borne out by the record of subsequent medical testing Diao underwent. Accordingly, Diao's interrogatory responses regarding his injuries were not false, and his TBI claim is not barred because he did not specifically identify "traumatic brain injury" in interrogatory responses served before TBI was diagnosed.

Second, SoCalGas points to the fact Diao did not disclose the three 2009 car accidents in response to form interrogatories asking him to identify injuries to the same parts of his body injured in the gas leak and fire and asking him to identify prior claims or demands for compensation for personal injuries. Diao testified at trial that he was unaware his father's attorney had made an insurance claim on his behalf regarding one of the car accidents, and he disputed he sustained a head injury in any of the car accidents. SoCalGas impeached Diao's credibility at trial with documents relating to one of the car accidents. An evidence sanction was not warranted.

Third, SoCalGas argues Diao misrepresented his academic history in his discovery responses. SoCalGas cites the new evidence it submitted in connection with its post-trial motions. The trial court sustained all of Diao's numerous evidentiary objections to this new evidence. SoCalGas does not properly challenge the trial court's evidentiary rulings on appeal. It merely states in a couple of footnotes that the new evidence was not offered for the truth of the matter asserted. Hearsay is not the only ground on which the trial court sustained Diao's objections to the new evidence. Because SoCalGas has not demonstrated the court abused its discretion in sustaining objections on multiple grounds, we may not consider this evidence on appeal.

Finally, SoCalGas faults Diao for not identifying Dr. Fisk as a treating physician when he voluntarily supplemented his interrogatory responses in January 2014. As addressed above, the evidence regarding whether Dr. Fisk was acting as a treating

15

physician or a retained expert at the time he conducted Diao's neurological examination in November 2013 was conflicting. Given that, we need not address this issue further.

## II. Sufficiency Of Evidence Of TBI Causation

SoCalGas contends there is insufficient evidence demonstrating the gas leak or fire caused Diao's TBI.

"In a personal injury action, causation must be proven within a reasonable medical probability based on expert testimony; a mere possibility is insufficient. [Citation.] A possible cause becomes 'probable' when, in the absence of other reasonable causal explanations, it is more likely than not that the injury resulted from its action." (*Sparks v. Owens-Illinois, Inc.* (1995) 32 Cal.App.4th 461, 476.) "[A]n expert's opinion based on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors [citation], has no evidentiary value . . . ." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117.)

Substantial evidence presented at trial demonstrated, after SoCalGas's employee uncapped the gas line to the garage, Diao slept for another two hours as one-quarter to one-third the volume of his room filled with natural gas. When Diao awoke and sparked the lighter, he heard a boom, saw fire engulf his room, and felt a force pushing against him as he ran out of the garage. At trial, Diao testified the force of the explosion knocked him to the ground, although he denied falling when he testified earlier at his deposition.

According to Diao's experts, results of neuropsychological testing, a SPECT scan and an fMRI of Diao's brain indicated TBI.

Regarding causation, substantial evidence demonstrated Diao's friends and family noticed a decline in his cognitive functioning after the gas leak and fire. His memory, comprehension and reaction time were slower after the fire than they were before the fire.

Dr. Buchsbaum (Diao's retained radiologist/psychiatrist) testified about TBI causation. He gave his opinion the TBI did not predate the gas leak and fire based on the severity of the damage shown on the brain scans, and the substantial evidence of Diao's cognitive decline after the gas leak and fire and absence of these cognitive impairments before.

16

Like Dr. Fisk, Dr. Buchsbaum testified that four factors could have contributed to Diao's TBI: the blast that occurred when the natural gas ignited, trauma to Diao's head in connection with the blast (striking his head on an object or the ground), anoxia (a lack of oxygen), and inhalation of carbon monoxide. Based on his review of the brain scans, and the "asymmetry" of the brain injury, Dr. Buchsbaum opined the blast or head trauma during the blast caused Diao's TBI. Dr. Buchsbaum had recently worked on and completed a study supported by the veterans administration regarding blast injuries in veterans from Iraq. He explained how and why a blast, "just in and of itself, can shake and distort the brain" causing TBI without head trauma or a skull fracture.

Based on the foregoing, substantial evidence presented at trial demonstrated it is more likely than not that the gas leak and fire caused Diao's TBI and that there is an absence of other reasonable causal explanations.

## III. Damages Award

### A. Diao's counsel's conduct

SoCalGas contends Diao's counsel committed misconduct in arguments to the jury. According to SoCalGas, Diao's "counsel delivered an inflammatory closing rebuttal in which he vilified SoCalGas, invited the jury to punish the company for defending itself at trial and for unproven injuries to *other* hypothetical victims, and referred extensively to SoCalGas's wealth and resources, despite the court having largely granted SoCalGas's Motion in Limine No. 8, precluding such references."

SoCalGas takes issue with the following types of arguments Diao's counsel made: Diao's counsel referred to SoCalGas as a "bully" in condemning SoCalGas's litigation tactics (e.g., cross-examining Diao for more than 50 pages of transcript regarding the prior car accidents); indicated SoCalGas would celebrate and move on to the next case, the next burn victim if the jury awarded Diao the insufficient amount SoCalGas suggested ($1.6 million in total damages); commented that it is difficult to fight the gas company given its "unlimited resources;" and highlighted the cumulative amount SoCalGas spent on expert witness fees.

17

Below, SoCalGas did not object to any of counsel's arguments it now takes issue with on appeal. SoCalGas did not afford the trial court an opportunity to evaluate any of these claims of misconduct and provide an admonition if necessary. Accordingly, these claims of misconduct are forfeited on appeal. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 794-795.)

SoCalGas asserts an objection was not necessary to preserve these claims for appeal because counsel's misconduct was repetitive and multiple objections "would only have exacerbated the prejudice." SoCalGas's counsel did not make any effort to stop the alleged misconduct with even one objection. Indeed, "'[o]ne of the primary purposes of admonition at the beginning of an improper course of argument is to avoid repetition of the remarks and thus obviate the necessity of a new trial.'" (*Cassim v. Allstate Inc. Co.*, *supra*, 33 Cal.4th at p. 795.) The types of arguments SoCalGas belatedly complains about are precisely the types of arguments that could have been ameliorated with an admonition, to the extent SoCalGas believed at the time of trial that the arguments were improper (e.g., comments about its resources, and comments about other potential victims).

We do not condone, and in fact strongly disapprove, Diao's counsel's conduct during argument in making inflammatory and inappropriate comments to the jury. But even if SoCalGas had preserved these claims for appeal, we would not reverse the judgment based on the portions of counsel's argument with which SoCalGas now takes issue. None of the comments SoCalGas plucks from counsel's argument, alone or in combination, constitute reversible misconduct. SoCalGas cannot demonstrate it is reasonably probable the judgment would have been more favorable to SoCalGas if Diao's counsel had not made these comments. (*Cassim v. Allstate Ins. Co.*, *supra*, 33 Cal.4th at p. 802.) The award is not excessive in light of the evidence presented, as discussed in more detail below.

### B.  Propriety of amount of award

SoCalGas contends the $19,786,818 damages award is excessive, disproportionate to other awards for comparable injuries, punitive and violates due process.

18

The standard of review in cases in which a defendant "attacks the jury verdict on the ground of excessive damages . . . is well established." (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078.) "The amount of damages is a fact question, committed first to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial. [Citations.] All presumptions favor the trial court's ruling, which is entitled to great deference because the trial judge, having been present at trial, necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence rather than our standard of review under the substantial evidence rule. [Citations.] [¶] We must uphold an award of damages whenever possible [citation] and 'can interfere on the ground that the judgment is excessive only on the ground that the verdict is so large that, at first blush, it shocks the conscience and suggests passion, prejudice or corruption on the part of the jury.' [Citations.] [¶] In assessing a claim that the jury's award of damages is excessive, we do not reassess the credibility of witnesses or reweigh the evidence. To the contrary, we consider the evidence in the light most favorable to the judgment, accepting every reasonable inference and resolving all conflicts in its favor." (*Ibid*.)

As outlined above, the jury awarded Diao $186,718 in past economic damages, $2,600,100 in future economic damages, $8,500,000 in past non-economic damages, and $8,500,000 in future non-economic damages, for a total damages award of $19,786,818. SoCalGas addresses its arguments to the total damages award as a whole and does not analyze each separate category of damages awarded and explain why it believes that particular amount is too high.

SoCalGas views the award in light of a universe of injuries that does not include TBI, based on its arguments the trial court should have excluded evidence of TBI and Diao presented insufficient evidence of TBI causation at trial. We have rejected these arguments and accordingly include TBI in our calculus of the propriety of the award. SoCalGas maintains, even if TBI is included, the award is still too high. We disagree.

Substantial evidence presented at trial demonstrates: Diao suffered through the trauma of a natural gas explosion and fire in his bedroom. He sustained burns on 18-20

19

percent of his body. He underwent excruciatingly painful treatments and suffered through a lengthy and painful healing process. He has extensive scarring on his body that continues to cause him great physical and mental discomfort. He will undergo additional surgeries and treatments to alleviate some of his discomfort and to improve the look of the scars, but the scars will always be visible.

As a result of the gas leak and fire, Diao suffered TBI. His cognitive functioning declined in a manner noticeable to his friends and family. He could not succeed in college or in his employment due to troubles with memory and comprehension. He will likely develop early-onset dementia by age 55 and be unable to take care of himself.

Diao suffers from depression and his outlook on life has changed. He rarely socializes and does not date.

In light of these severe and debilitating injuries, we do not find the award is excessive. We are not persuaded by SoCalGas's comparison of this award to awards in other cases. "Each case must be determined on its own facts." (*DiRosario v. Havens* (1987) 196 Cal.App.3d 1224, 1241.) The award in this case is supported by the evidence.

"The mere fact that the judgment is large does not validate an appellant's claim that the verdict is the result of passion or prejudice of the jury." (*DiRosario v. Havens*, *supra*, 196 Cal.App.3d at p. 1241.) The jury deliberated for one and one-half days during which the jury requested and received both sides' written breakdowns of suggested damages for each category of injuries. The jury did not award Diao the entire amount he requested—$36,500,000. It awarded about half. Based on the record before us, we do not find the award is punitive or based on passion or prejudice.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover costs on appeal.

NOT TO BE PUBLISHED.


                                        CHANEY, J.


We concur:



        ROTHSCHILD, P. J.



        JOHNSON, J.